All right, our next case then is McAvoy v. Dickinson College, number 23-2939. Obviously, we didn't send you lights, so you probably have to keep time on your own, but you have 15 minutes aside, and Appellant's Counsel, Ms. Vinci, do you want to reserve time? Yes, I'd like to reserve three minutes for rebuttal, Your Honor. That'll be granted. Okay, you may proceed whenever you like. Thank you. May it please the Court, my name is Gabrielle Vinci. I am here on behalf of the Appellant, Rose McAvoy. As stated off the record, I'd like to reserve three minutes of time for rebuttal. Thank you. Yes, that's good. Thank you. As a little background to this case, Ms. McAvoy is a former student of the Dickinson College, who in October of 2017, unfortunately, suffered a sexual assault at the hands of a fellow student on campus. This action stemmed from the Respondent College's response and investigation into the report of that result, as well as the handling of Ms. McAvoy's continued reports of harassment and a hostile environment while the Title IX investigation was ongoing. Ms. McAvoy appeals the District Court's granting of summary judgment to Dickinson College on her Title IX and breach of contract claims, and if it pleases the Court, I will start with Ms. McAvoy's Title IX claim. Great. Now, Title IX has a different standard than Title VII. One thing that I was wondering about is that one of the standards for the acts have to be pervasive. At least so says the Sixth and Eighth Circuits. Here, it was, and I don't, I'm not demeaning in any way what happened to her, but it happened once. Can one instance be pervasive under Title IX? Yes, Your Honor. A single incident of sexual harassment can be found to meet the severe pervasive test under Title IX. Do you have, do you have any, okay, thank you. Yes, Your Honor, that comes from the Davis v, apologies, Davis v. Monroe County Board of Education matter. It seems that Hall was also a single incident case and that the horrible subsequent murder was considered by the Court as evidence of deliberate indifference, but that it was not part of the pervasive and severe analysis. Is that correct? Yes, that is my understanding as well, Your Honor. But here, I believe, go ahead, I believe a key distinction with the standards between Title VII and Title IX, although Title IX does rely and look to precedent under Title VII, is that under Title IX, the deliberate indifference standard set by the Davis Court states that the response cannot leave the victim student vulnerable to possible harassment. It does not actually require that the continuing harassment happen. The student must not be left vulnerable to the harassment. And I think here in the record, not only is there sufficient evidence that Ms. McAvoy did experience ongoing harassment, or at least sufficient record evidence that a jury could find she experienced ongoing harassment, but that she was in fact left vulnerable to it. Before we get to the severity and the pervasiveness of the harassment, can you tell me how Dickinson was deliberately indifferent here? Yes, Your Honor. So, it is our position that Dickinson College was deliberately indifferent, in particular, at the beginning of the investigation. And I would point to several incidents that Dickinson College, in terms of their actions, or rather inactions, engaged in. The first is, despite knowledge that there was crossover in extracurricular activities, particularly theater group, between Ms. McAvoy and her assaulter, there was no consideration given to any interim measures from the beginning as to how to account for that known crossover between the two parties. When you say the beginning, what's your beginning date? December 6th. When a formal investigation... Is it Halloween or December 6th? December 6th, when Dickinson College was on notice of Ms. McAvoy's... Didn't they start their investigation on December 7th? They did, Your Honor, but that investigation, although it was seemingly started the day after, they delayed by several days the institution of a no-contact directive, the only basis that we have in the record. How many days? Four, Your Honor. How many days? Okay. So, your first point of deliberate indifference is a four-day delay. Is that what you're telling us? Yes, Your Honor. There is no basis for the delay in the record, other than the Title IX coordinator's belief that nothing would happen within those four days. Before you move on to the next point in time, I have a fact question. The record reflects, and you argue that there's a dispute as to whether or not the client's testimony was repeatedly tried to steer her towards an informal resolution that was unavailable under the policy. Would an informal mediation be reportable per Dickinson's own policy? So, it seems there are two types of reporting that were at issue here, the Clary report, and then at 8-260, it says, Dickinson reports to the community any incident that has reached a final resolution under this policy. So, if they had succeeded in steering your client towards an informal resolution that was not available under the policy, would that have allowed them to avoid reporting this incident? I apologize, Your Honor. I do not know the answer to that question. I do not believe that that would have, because there would not have been a final formal resolution to the complaint, but I do not know that to be 100% certain. And the same question as far as the Clary, there was some allegation in the complaint that it was misreported or not reported in the Clary report. Is that still a disputed fact? Because I didn't see it, you know, mentioned later, and it seems that some of the Title IX law indicates that if there is a motive to, so to speak, sweep something under the rug, that is something to consider in a college's response. What exactly is the state of that Clary report allegation today? My understanding, Your Honor, was that was rectified. Rectified after your client raised it? I guess my question is, was it still part of the motion for summary judgment record as to why the initial response was for the response in general? It certainly was. It certainly was, in our view, a considerable factor for the motive of Dickinson College and how they treated Ms. McAvoy's report of sexual assault and continued sexual harassment. It was not a point that was specifically raised or outlined any further than a mention of it on the summary judgment record. Okay, thank you. Back to Judge Fischer's question. I really have another question, so let me ask you a separate question. If we agree that the district court's decision on summary judgment was proper under Title IX, what should we do with your breach of contract claim? I think that the decision regarding the breach of contract claim should be reversed. Looking at the district court's decision and the briefing on the breach of contract claim, it was conceded by Dickinson College that there was no written notice to my client regarding the delay or the reason for the extensive delay in the investigation. The main issue was whether or not the plaintiff suffered damages. The district court's finding that essentially there couldn't be conceivable damages because she got some status reports does not comport with the record, where she indicates that the prolonged investigation, the lack of notice, lack of knowledge as to why the investigation was so prolonged, caused her emotional distress, academic failings in her academic career resulting in a prolonged graduation or prolonged enrollment at Dickinson College, leading to financial damages. That is not addressed by the district court. The district court simply states that because there was in the investigative notice, the notice of the investigation rather, there was an indication that the investigation may take more than 60 days, that that's sufficient to show that plaintiff did not suffer damages. I think that those are two different issues that need their own consideration. Isn't this a little bit of a catch-22 though? True, they didn't finish it in 60 days, although they did tell your client that it would take longer than 60 days, particularly because it was right before a break in semester. They ended up taking the investigation fairly seriously, I would think. They hired outside investigators. They interviewed a whole bunch of people, interviewed two of them twice. I mean, these things, I guess, take some time, and they had verbal, and your client had verbal notice that it was going to take a little bit longer than 60 days. I mean, is there really, you know, would you rather if they just pushed something out in 60 days? No, Your Honor, we're not saying that Dickinson College, well, certainly I think my client would have preferred that there be a robust investigation within the 60-day timeline or projected timeline. The fact that it went well, well beyond that, from the start of the investigation to the sanctioning, which is what the 60 days is to account for, actually lasted roughly 209 days, so roughly, I think, three times more than Dickinson College accounts for in their policy. I don't think this is that effect of that prolongation, and the lack of any reason for that, the lack of any basis for that, the lack of any notice other than an initial notice that it may take longer than 60 days because of an impending break in the semester did cause my time is up, Your Honors. I did just have, I just want to clarify one thing. So the breach is the lack of notice, not the duration. Is that correct? Correct. So the policy does not state, and we can see that the policy does not state that it will be completed in 60 days. The policy states that the college will endeavor to complete in 60 days, but that investigations and the process may take longer, and in the case that the process does take longer, the parties will be provided written notice as to the delay and the reason for the delay. My client, other than in the initial investigative notice of investigation, did not receive any further notice as to there being a delay or the basis for the delay, and in fact, during discovery in this case, no representative from the college could elaborate on why there was any delay. Okay, thank you, counsel. We'll hear from your adversary. Thank you. May it please the court, Kimberly Colonna of McNeese Wallace and Nurick on behalf of the Appalachian Dickinson College. First, let me say that Dickinson certainly recognizes that plaintiff's sexual assault by a peer was unfortunate to say the least, but that does not mean that the college is liable to the plaintiff in this case, and if I can just start with the deliberate indifference standard, you know, that standard requires far more than just a negligence standard or just a reasonableness standard. The Davis decision from the United States Supreme Court is very, very clear about that. You asked my opponent whether one incident of harassment can be rejected. It said that while that might be theoretically possible, we think it is unlikely that Congress would have thought that such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment, and I think that gets to really the heart of this case is because when you step back and look at the situation and say, how do we see deliberate indifference, what you have is that one sexual assault, serious, absolutely serious, but the college is- Again, Ms. Colonna, that seemed to be our court's exact analysis in Hall. The court's analysis was there was a single instance of domestic violence that the school did not respond to and all of the ensuing events were evidence of deliberate indifference but were not themselves considered to be part of the severe and pervasive harassment, severe and pervasive character analysis. So I don't, you know, I don't actually think that Hall is inconsistent with the position that Dickinson is taking. First of all, Hall is distinguishable because in Hall, the college did nothing. The college said to itself, hey, the bad guy, you're a third party. We don't have any authority over you. There's nothing we can do. That's not the case here. That control piece is important. Ms. Colonna, while Dickinson states that it made many offers, the evidence is in between when the measures were taken under the, other than the initial NDA. I mean, your briefing, or NDC, sorry, seems to rely heavily on the fact that Ms. McAvoy did not make any specific requests, but the Dickinson policy itself says, regardless of a complainant's chosen course of action, the college will take reasonably available interim measures to protect the parties involved and ensure the safety, emotional and addressed. Why is it a young student's duty to come up with requests? Dickinson's own policy is that Dickinson and the Title IX coordinator, who presumably has training, is the person who should be deciding interim measures, regardless of a complainant's preferred course of action or requests. So again, interim measures are imposed regardless of whether a complainant chooses a formal investigation, an informal investigation, or no process at all. They are there to support the student. And here, it's not actually correct that there was only one interim measure. There was a no-contact directive, yes. There were multiple academic accommodations that the plaintiff requested. Those are also interim measures. But to say to the college it was clearly unreasonable for you to not, of your own will, impose interim measures that Ms. McAvoy may never have wanted, is not... Well, the question is not whether or not it is clearly unreasonable, but whether it's a jury question. So couldn't a reasonable juror find that Ms. McAvoy's repeated reports of unwanted interactions were her desire to see the college do something and conclude that the college, under their own policy, not doing anything, was clearly unreasonable? No, because first of all, the record does not contain any facts whatsoever of any interactions between Ms. McAvoy and the respondent, her assaulter, during the course of the investigation until he left the college. There is no communication. There is no contact. So the no-contact directive recognizes that there was... That might be it. That's what I'm asking. There seems to be a fact issue that was resolved in that there were multiple instances of contact and that she perceived him to be purposely in her vicinity, sitting behind her, staring at her. That seems to be something that would heavily depend on the credibility of the witnesses. Why isn't that a jury fact rather than something the district court should have resolved in Dickinson's favor? Because again, you have to look at Ms. McAvoy's testimony. She did say, I felt like he sat near me in the cafeteria. That's not a violation of the no-contact directive. Does it matter if it's a violation if she's vulnerable to harassment? I mean, why does it matter if it's a violation? The policy is simply that interim measures should be implemented. And again, it does not depend on the complainant's course of action, but to protect and ensure the safety, emotional and physical wellbeing. So if a reasonable juror could say these repeated reports to Dickinson reflected that she did not feel emotionally and physically safe, why does it matter if it was an actual violation or not? It seems that under your own policy, Dickinson could nonetheless elect to take additional interim measures. Certainly could have elected to take additional measures, but that's not the legal standard. The legal standard is, was it clearly unreasonable for Dickinson to do what it did? And again, Dickinson does not... Sexual assault is all about control. It is all about taking away the control of the person who experienced it. To have a policy or process that takes the control away from that student and says, you've not asked us for housing accommodations, but we're moving you. You've not asked us for dining hall accommodations, but we're going to require you to eat and the respondent to eat between those hours. You didn't ask us for theater accommodations, but we're going to require you to only participate in half of the shows and have the respondent only participate in the other half of the shows. That's why... I understand your arguments. It just seems to me that all of those inferences were made in favor of Dickinson by the district court. For instance, you say she did not ask for housing accommodations, but her testimony is that she was affirmatively told that they were not needed, that she voiced concern about theater and that she was implicitly discouraged from asking for any by her advisor saying, well, you know, those are pretty hard. I mean, again, a reasonable juror could certainly interpret it in the same way you do it. I'm just... We're not talking about whether or not it was in fact clearly unreasonable. It's whether or not it's a jury question and whether or not inferences were made in favor of Dickinson that were inappropriate at the summary judgment stage. I completely understand your question, but I would say this. You've got to look at Rose's full testimony. You've got to look at Ms. McEvoy's full testimony. Yes, she says, my advisor told me it can be difficult to do theater accommodations. He said, we just have to make sure you guys are not in the same shows together. We've done it before. That was Ms. McEvoy's testimony. The other thing I'd say is you can't look at each of these incidences one at a time. You have to look at the college's overall response, which includes academic supports, no contact directly. At least 14 written invitations for Ms. McEvoy to come to the Title IX coordinator with concerns, with requests for help, with needs that she had for support. And yet you do not have Ms. McEvoy saying, I affirmatively decided that I wanted dining hall accommodations. I affirmatively decided that I wanted the college to implement accommodations around theater. You have her saying, I don't know if I ever decided. I don't think I ever asked. In theater, I never asked. I only asked about one event that was student run and the request I made was granted. When you have that set of facts, it falls clearly within what Davis is saying is, hey, summary judgment is absolutely available because this is such a high standard. The very last thing I want to say is don't be fooled by the theory that because Ms. McEvoy was vulnerable to some potential incident risk that she might be harassed again by the same peer is enough under Title IX and Davis. It is absolutely not. She needs to show additional harassment and additional harassment that is severe, pervasive, and objectively offensive. It's not enough to say I walked around campus afraid that something might happen. By the way, I didn't request accommodations that I knew were. But wasn't that expressly rejected in hall where we said that the plaintiff did not have to show that deliberate indifference caused the ensuing severe action, which was unfortunately a murder, but only that it's deliberate indifference resulted in her being excluded from participation, denied the benefits of, or subjected to discrimination under the college's education program. If you read hall that way, then you're reading hall to conflict with the Supreme Court's decision in Davis. Hall, there was a second act. As you already pointed out, the second act was the absolutely horrendous murder of that student. Here, you look at the record, what's the second act that occurred? What is the next thing that happened because the college was allegedly deliberately indifferent? The answer to that is nothing. Nothing happened. Can we turn to another question here? I'd like to know on the breach of contract claim. It seems that the dispute or the point that you have raised and that the district court raised was the inability to show resultant damages. If in fact there was a breach of the contract to perform this investigation at a reasonable period of time. Isn't the extra expenses of the extra year of travel expenses for that year, couldn't they at least be disputed facts that a jury could consider as resultant damages from the delay? Two quick responses on that. I think I heard plaintiffs counsel say that they're not actually making a claim of breach based on delay because they recognize the language of the policy. More importantly though, if the investigation had completed in seven days, the sanction was not removal of the offender from campus. He still would have been on campus as he was on campus during that additional semester. Where is the damage there? If you believe that there was some causation, that's where it falls apart. Because if the sanction was imposed earlier, he still would have been on campus and the same fear that something might happen would have existed. By the way, but the contract damages do not seem to be dependent on his presence there. Their argument and correct me if I'm wrong, is that the delay and the failure to know what was going on is what caused her distress, caused her to stop participating in some classes, having to drop some classes. Certainly the Title IX claim talks a lot about the unwanted interactions or contact with him, but the breach of contract claim seems to be largely dependent on the duress that was caused by the extended nature and the lack of notice. So let me just say there were nine times that the college provided written notice to Ms. McAvoy of the status of the investigation. She herself was interviewed three times. So obviously at those points in time, she knew what was happening in the investigation. And her own deposition testimony was when I had... Does the record show that Dickinson ever explained why they couldn't meet the 60-day deadline? That is not in the record. The Title IX coordinator who was deposed by plaintiff's counsel was not the Title IX coordinator at the time this investigation was ongoing. So there is nothing... You have to concede as well that it was never in writing any of these extensions, right? I mean, there was an out for good cause, but it called for expression of good cause in writing. That never happened, right? That is absolutely right. That is a technical violation of the policy, but then you have to say to yourself, what damage did that cause? And the answer is none because the plaintiff knew what was happening in the investigation. She doesn't say otherwise in her testimony. In fact, she says, when I needed to know, I asked my advisor and he would report. And by the way, nine notices to her, written notices of the status. So again, the fact that there wasn't a nice, simple, pretty piece of paper that said, hey, these are the reasons for the delay, that does not create a breach of contract that results in damages to her. Okay. Thank you, counsel. Your time is up. We'll have rebuttal now. You can go ahead, Ms. Vinci. Thank you, your honors. Just a couple of points that I wanted to follow up on regarding Ms. McAvoy's Title IX claim. And I do believe, your honor, Judge Chung sort of hit the nail on the head in terms of Ms. McAvoy's claim regarding deliberate indifference and what happened, the college's response to these ongoing reports that she was encountering, Mr. Schmidt, the respondent, her assaulter, that she had concerns regarding theater. At every point, the college argues that pretty much the onus, the burden was on Ms. McAvoy to do something with the theater activities. She was told, well, that's going to be very difficult. You might be better off just handling it yourself. That is insufficient to protect her. And we say, we hold that that is clearly unreasonable to put the burden on Ms. McAvoy. We believe that supporting precedent for that can be found in Goodwin versus Penridge School District. That is 389F Supplement 3, 304. It's a case out of the Eastern District of Pennsylvania, where incidents such as receiving text messages, unexpectedly seeing her assaulter at school, intentional direct or indirect contact with the assaulter, the assaulter visiting common areas and it being known and not addressed by the school was sufficient to be, to raise to a level of Title IX for a jury to decide whether or not the response was clearly unreasonable or deliberately indifferent. I do also agree with my adversary, with Attorney Colonna, that you cannot look at the incidents outlined in our briefing in a bubble. You cannot look at them one at a time and say, well, we saw her in the lunchroom here. They didn't do anything about it. So that's not contact between Ms. McAvoy and her assaulter and the continued exposure of him to her and the utter lack of any response from the college to that continued exposure and continued contact in our review raises at least a question of fact for the jury to decide whether or not Dickinson College acted with deliberate indifference. And I do see that my time is dwindling down. Okay. Well, thank you, counsel, for your excellent briefing and argument today. We're going to take the case under advisement. We wish everyone good health and we will hopefully see you live sometime. So thank you.